IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-CR-27 |
| | ) | |
| ERRICK E. GILMORE, | ) | (PHILLIPS/GUYTON) |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Defendant's Motion to Suppress Defendant's Statements [Doc. 18], filed on June 29, 2009. The Government responded [Doc. 19] in opposition to the motion on July 29, 2009. The Court held an evidentiary hearing on September 22, 2009. Assistant United States Attorney Melissa M. Millican represented the Government. Attorney R. Alexander Brown appeared on behalf of the Defendant, who was also present. The Government presented the testimony of Knoxville Police Department (KPD) Officer Ryan Flores. The hearing was continued to October 23, 2009, for the Defendant to continue to seek medical records. The parties appeared at that time and presented oral argument on the issues. At the conclusion of the hearing, the Court took the motion, response, testimony, exhibits, and oral arguments under advisement.

## I. POSITIONS OF THE PARTIES

The Defendant is charged [Doc. 2] with the robbery of a Burger King restaurant engaged in interstate commerce (Count One), brandishing a firearm during a crime of violence (Count Two), and being a felon in possession of a firearm (Count Three), all of which are alleged to have occurred on December 31, 2008. The Defendant argues that the statement he gave to Officer Flores while in custody on January 13, 2009, should be suppressed because he was not able to make a knowing and voluntary waiver of his <u>Miranda</u> rights. He contends that he has paranoid schizophrenia and bipolar disease and that at the time of the statement, he had not taken his medication in four months. He maintains that due to his medical condition, he could not rationally or knowingly waive his Fifth or Sixth Amendment rights.

The Government responds that the Defendant voluntarily waived his rights prior to giving his statement and that his statement was not the product of police coercion. Additionally, it contends that because the Defendant's statement is relevant to a federal prosecution, the dual sovereignty doctrine applies to the Defendant's Sixth Amendment right to counsel.

## II. SUMMARY OF EVIDENCE FROM SUPPRESSION HEARING

The Government called Officer Ryan Flores, who testified that he had worked for the KPD for thirteen years and presently served as a violent crime investigator. On January 13, 2009, he was contacted by his supervisor who told him that the Defendant wanted to speak to an investigator. He had the Defendant transported to the KPD offices. When he met with the Defendant, he advised the Defendant of his rights both orally and using a printed form, which he read aloud to the Defendant. Officer Flores said he spoke with the Defendant in a small room on the third floor. He and the

2

defendant sat at a six foot by three foot table. The room was carpeted and contained two video cameras.

Officer Flores testified that the defendant seemed "mostly coherent" and "normal." He stated that the Defendant did not appear to be under the influence of any substance. The Defendant responded to his questions and appeared to understand what he said. Officer Flores said that the Defendant did not request an attorney and agreed to answer questions without an attorney present. He did not make any promises to the Defendant, nor did he coerce the Defendant. At points in the interview, the Defendant attempted to make demands. The Defendant confessed to robbing the Burger King. Officer Flores believed that the Defendant's statement was made freely and voluntarily. Flores said that he always took contentions that a juvenile was in danger seriously.

The Government introduced an audio recording of the Defendant's statement as Exhibit 1. AUSA Millican played a portion of the recording for the Court. On the CD, Officer Flores advised the Defendant of his Miranda rights. The Defendant said that he would give a full confession about what happened on January 1, 2009,[1] if the officer could assure him that his nephew, who was presently detained as a juvenile, was protected and separated from the persons he was about to implicate as well as from the members of certain gangs. The Defendant stated that he knew his life was over and that he had told his attorney that he was trying to talk with the KPD. The Defendant said that he had "bugged" the guards all day in order to be brought over to speak to someone.

On cross-examination, Officer Flores testified that the county had contacted their office and relayed that the Defendant wanted to speak with someone. He said he was not aware that the

---

[1] The Court has taken this testimony to mean the events of the night of December 31, 2009, which appear to have continued through January 1, 2009.

3

Defendant was on medication, and he was unaware of any suicide threats by the Defendant. He said that he knew the Defendant had an attorney because the Defendant mentioned it in the interview. He was aware that the Defendant had state charges. The Defendant asked Flores to check on his nephew and to let his sister know what was happening. He said that at one point, he thought the Defendant was trying to play games with him. On redirect examination, Officer Flores testified that he was not the case-agent in this case and that his only part in the investigation was taking the Defendant's statement.

### III. ANALYSIS

The Defendant argues that he could not knowingly and voluntarily waive his rights under the Fifth and Sixth Amendments to the United States Constitution, due to his mental condition at the time he gave his statement. The Government argues that the Defendant voluntarily waived his rights prior to confessing. The Government maintains that his statement was not the product of police coercion.

#### A. *Pertinent Facts*

The Court finds the following facts to be relevant in addressing the issues presented: The Defendant was arrested in the early morning of January 1, 2009. At some point between January 1 and January 13, state charges were brought against the Defendant and he was appointed counsel. On January 13, the Defendant expressed a desire to speak with a KPD officer. The jail relayed this information to Officer Flores' supervisor, who, in turn, contacted Officer Flores. Officer Flores had the Defendant transported from the jail to the KPD offices. The audio recording of the Defendant's

statement reflects that the meeting between the Defendant and Officer Flores began at 3:20 p.m.

The Defendant informed Officer Flores that he wanted to talk but had some conditions. Officer Flores told the Defendant that first he had to make sure the Defendant understood his rights. Officer Flores read the rights waiver to the Defendant. The Defendant said that he understood his rights and agreed to waive them. The Defendant then told Officer Flores that he would give a full confession to two aggravated robberies on January 1, 2009, if Flores would assure him that his nephew, who was currently detained in a juvenile facility, was protected from the people the Defendant would implicate and from members of certain gangs. He also wanted Officer Flores to contact his sister, his nephew's mother, to let her know that he was making a confession so that she could call the juvenile facility to have her son placed in protective custody. The Defendant told Flores he had been "trying to get up here for so long" and that he came without his attorney because he was tired of dealing with the attorney. The Defendant subsequently stated that he had told his attorney that he was trying to call the KPD and that he had "bugged" the guard until he finally contacted Flores' supervisor. When Officer Flores told the Defendant that he had to know from whom the Defendant's nephew needed protection, the Defendant proceeded to give information about the robbery of a Burger King on Broadway. When Officer Flores questioned him about the car used by the perpetrators and later about persons working at the Burger King that night, the Defendant declined to give that information until his nephew was protected.

After Officer Flores arranged for the Defendant's nephew to be separated from certain individuals, the Defendant proceeded to give a statement about two prior robberies of Burger King, in which he was not a party, and of two robberies on New Year's Eve and Day, involving him and his nephew. Late in the interview, the Defendant remarked that his attorney would come to see him

when he finds out that the Defendant has given a statement. Finally, toward the very end of the interview, the Defendant told Officer Flores that he wanted to give a statement but his attorney discouraged it. The Defendant reiterated that he has been "bugging" the jail personnel to get in touch with the KPD for days. The Defendant told Officer Flores that he knew he was about to go to the federal penitentiary for the rest of his life but he did not want to throw his nephew "to the wolves." Agent Flores noted that the interview was completed at 5:11 p.m.

*B. Law and Application*

The Fifth Amendment to the United States Constitution protects against a defendant being "compelled in any criminal case to be a witness against himself," U.S. Const. amend IV, and pursuant to the Sixth Amendment to the United States Constitution, a defendant is entitled to assistance of counsel. In light of these protections, the Supreme Court of the United States has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth and Sixth Amendments. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966); see also United States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998).

Thus, before law enforcement officials may question a suspect in custody, the officials must inform the suspect that he has a right to remain silent, that his statements may be used against him in court, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to questioning. Miranda, 384 U.S. at 479. "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." Stansbury v. California, 511 U.S. 318, 322 (1994); Salvo, 133 F.3d at 948.

Even when the Miranda warnings are administered, the government must prove that the defendant voluntarily, knowingly, and intelligently waived those Miranda rights before it may introduce an incriminating statement by a defendant. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). The government bears the burden of proving the voluntariness of the waiver by the preponderance of the evidence. Id. at 168. To determine whether a confession was voluntary, the court must examine the following factors in light of totality of the circumstances: (1) whether the police conduct was objectively coercive, (2) whether the coercive police conduct was sufficient to overbear the defendant's will when viewed subjectively from the defendant's state of mind, and (3) whether the coercive police conduct was in fact the cause of the defendant's will being overborne. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Connelly, 479 U.S. at 167. "If the police misconduct at issue was not the 'crucial motivating factor' behind petitioner's decision to confess, the confession may not be suppressed." McCall, 863 F.2d at 459 (citing Connelly, 479 U.S. at 163-64).

To assess whether a confession was voluntary, the Court must "examine 'the totality of the circumstances surrounding the confession, both the characteristics of the accused and the details of the interrogation, and determine[ ] their psychological impact on an accused's ability to resist pressures to confess.'" United States v. Rigsby, 943 F.2d 631, 635 (6th Cir. 1991) (quoting United States v. Brown, 557 F.2d 541, 546 (6th Cir.1977)).

Although the Defendant claims to have been incapable of making a knowing and intelligent waiver because of untreated medical conditions, these supposed conditions alone do not render his confession involuntary: "Evidence that a defendant suffered, at the relevant time, from a condition

7

or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary." United States v. Newman, 889 F.2d 88, 94 (6th Cir. 1989). Here, the Court finds no evidence of coercion on the part of the officers.

In certain cases, a defendant's lack of schizophrenia medication may support limiting the use of statements made by a defendant. For example, in United States v. Betters, 229 F.Supp.2d 1103 (D. Or. 2002), officers were dispatched to a disturbance at 3:20 a.m. and found the defendant with her pants down in a small shed threatening to urinate on the garage floor, which belonged to a male who was also present. Id. at 1105. During the encounter that followed, the defendant's mood swung a few times between belligerence and cursing to calmer moments, and at some point, the officers handcuffed Betters when she became belligerent again. Id. at 1106.

At the suppression hearing in Betters, a psychologist testified about the defendant's mental condition and said he believed the defendant "was in a manic phase at that time [of the confession] . . . ." Id. The psychologist further testified that, in his opinion, the defendant "could not appreciate the nature of the requests, the rights she was giving up, and the possible consequences." Id. Based upon the foregoing, the court in Betters reasoned that, though statements made by the defendant were voluntary and therefore admissible for impeachment purposes, they were not the products of a knowing and voluntary waiver of the defendant's Miranda rights.

In contrast, the evidence before the Court does not demonstrate any behavior consistent with the medical conditions alleged by the Defendant. Instead the Defendant participated in a coherent interaction with Officer Flores. The Defendant did not fluctuate in mood, let alone become belligerent to the point of necessitating physical restraint, such as handcuffs. Further, the Defendant

8

has presented no medical testimony which would support a finding that he was in a manic phase or that his schizophrenia was influencing his cognitive abilities. In addition, there is no evidence that the Defendant could not appreciate the nature of his statements and their consequences. To the contrary, the recording of the Defendant's interaction with Officer Flores indicates that he knew the nature of his statement and its potential repercussions, as he repeatedly notes that he is making the statements against the advice of counsel and that the statements may affect his nephew's well-being because they implicate other persons in crimes.

The Court finds the facts presented in the present case to be more akin to the facts presented in Colorado v. Connelly, 479 U.S. 157 (1986). In Connelly, the defendant approached a uniformed officer, working in an off-duty capacity, and stated that he had murdered someone and wanted to talk about it. Id. at 160. The officer immediately responded by advising the defendant of his Miranda rights. Id. The defendant stated that he understood his rights but still wanted to talk about the murder. "Understandably bewildered by this confession," the officer asked the defendant a number of questions to ascertain whether he had been drinking or using drugs. Id. These questions revealed that the Defendant had been in several mental hospitals, so the officer again advised that the Defendant was under no obligation to speak. Id. The Defendant responded that his conscience was bothering him. Id.

At the suppression hearing in Connelly, a psychiatrist testified that the defendant had chronic schizophrenia and was in a psychotic state from at least the day prior to his confession. Id. at 161. Despite this medical testimony, the Supreme Court of the United States reversed the lower courts' decisions on the suppression issue. The United States Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning

9

of the Due Process Clause of the Fourteenth Amendment." Id. at 167. Thus, despite the medical evidence attesting to the Defendant's chronic schizophrenia and psychotic state and the Defendant's assertions, shortly after his arrest, that he had been given direction from the voice of God, the Court held that the defendant had made a voluntary waiver of his Miranda rights because there had been no coercive police activity.

In the present case, the Court has been presented with far less evidence of the Defendant's alleged conditions, and there has been no evidence presented diagnosing the Defendant as being in a psychotic or manic state at the time the statements were made. Even treating the Defendant's alleged diagnosis as true, the Defendant has presented no evidence that his untreated condition prevented him from making a knowing, intelligent, and voluntary his waiver of his Miranda rights. In contrast, the evidence in the record indicates that the Defendant knew that he had the right to counsel, that he had been assigned counsel to represent him on his charges, and that he choose to make his statements without counsel. He even explained that he was tired of dealing with his counsel. Further, the Defendant acknowledged that his statements would likely send him to the penitentiary, but he hoped that by making the statements he could aid his nephew. Thus, as in Connelly, the Defendant was advised of his Miranda rights, but was motivated to make statements by a need to 'come clean,' and potentially aid his nephew.

There is scant evidence before the Court that the Defendant was, at the time of the statement, suffering from a manic or schizophrinic episode, but even assuming a medical impairment existed, there is no evidence that Officer Flores, or any other officer, coerced the Defendant. The Defendant appeared to be rational and cognizant of the situation and his actions. There is no evidence that Officer Flores attempted to exploit any medical condition from which the Defendant might have

10

been suffering. The Court finds no coercive police activity, and thus, "a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment," is absent. Connelly, 479 U.S. at 167.

In sum, the Court finds that the Defendant was properly advised of his Miranda rights, including his right not to make any statements under the Fifth Amendment and his right to counsel under the Sixth Amendment. The Defendant made a knowing, intelligent, and voluntary waiver of his rights and, thereafter, made an incriminating statement to Officer Flores. Officer Flores in no way coerced the statement. Accordingly, despite the Defendant's contentions to the contrary, the Court finds that the Government has demonstrated that the Defendant's statement was properly obtained and voluntary.

In light of these findings and the Court's conclusion that the Defendant's statement is admissible, the Court finds that the Government's dual-sovereignty argument is moot, and the Court will not address the merits of this argument.

## IV.  CONCLUSION

After carefully considering the evidence, the parties' filings and arguments, and the relevant legal authorities, the Court finds no basis to suppress the Defendant's statement.  For the reasons set forth herein, it is **RECOMMENDED** that the Motion to Suppress Defendant's Statements [**Doc. 18**] be **DENIED**.[2]

>     Respectfully submitted,
>
>     ___s/ H. Bruce Guyton___
>     United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).